

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Amanda Chatman**

**EMPLOYER: Topre America**

**INSURANCE CARRIER: Farmington
Casualty Company/Traveler's**

**DOCKET #: 2014-06-0007**
**STATE FILE #: 54810/2014**
**DATE OF INJURY: July 15, 2014**

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Amanda Chatman, (Employee), on October 8, 2014, with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the continuation of medical benefits and the initiation of temporary disability benefits is appropriate, and whether Employer is responsible for the cost of a specific medical treatment.

The Court conducted a telephonic hearing on October 29, 2014. Employee participated with her Counsel, Keith Jordan. Topre America (Employer) and Traveler's Insurance Company (Carrier) participated through their Counsel, Emil L. "Chip" Storey Jr. Employee testified on her own behalf. Brandon Skipper, Brooke Holt and Christina Kilby testified on behalf of Employer.

Considering the positions of the parties, the applicable law and all of the evidence submitted, the Court hereby finds that Employee sustained an injury arising primarily in the course and scope of her employment. Employee is not entitled to past medical expenses relative to unauthorized care. Employee is entitled to a panel of orthopedic specialists to select a provider for ongoing medical benefits until such time as she reaches maximum medical improvement (MMI). Employee is entitled to temporary partial disability (TPD) benefits at this time.

### ANALYSIS

#### Issues

1.  Whether Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer.

1

2. Whether Employee is entitled to another panel of physicians in compliance with the law.

3. Whether Employer is obligated to pay for any past medical expenses.

4. Whether Employee is entitled to any past or future temporary partial disability benefits, and if so, in what amount.

## Evidence Submitted

The Court designated the following as the technical record:

- Petition for Benefit Determination, August 20, 2014
- Dispute Certification Notice (DCN), October 8, 2014[1]
- Request for Expedited Hearing, October 8, 2014.

The following documents were admitted into evidence:

Exhibit 1: Amanda Chatman Medical Records (ACMR), pages 1-80
Exhibit 2: Star Physical Therapy Progress notes
Exhibit 3: Time Card Reports, July 7-20, 2014 and July 21-August 3, 2014
Exhibit 4: Time Sensitive Request for Separation Information
Exhibit 5: Disciplinary Action Forms, June 18, 2014 and July 28, 2014
Exhibit 6: Separation Notice
Exhibit 7: Topre America Associate Attendance Policy
Exhibit 8: Associate Acknowledgement Form
Exhibit 9: Admission Notes, StoneCrest Medical Center, July 29, 2104[2]
Exhibit 10: Form C-42, Choice of Physicians[3].

## History of Claim

Employee is a 35-year-old resident of Nolensville, Tennessee. She worked fulltime, third-shift, as an assembly line worker at Topre America from January 6, 2014 until July 31, 2014.

Employee testified that on July 15, 2014, sometime between 9 and 10 PM, she suddenly felt a sharp pain in her left arm and shoulder while performing her assigned duties. She reported the injury to her supervisor, Jeff Steakley, and attempted to continue working, but could not keep up her usual pace. During her "lunch" break, she went outside to her car, where she lifted a cup. Immediately her arm "felt really heavy" and was "hurting worse." Upon her return to work, the pain worsened. She

---

[1] Various supporting documents were attached to the DCN and are part of the technical record. However, the Court did not consider any attachments unless properly admitted as evidence.
[2] Portions of these records were not available at the teleconference. The Court allowed Employee's Counsel 10 business days to submit the additional information, because it appeared that they would be critical to the resolution of one of the issues before the Court at the Expedited Hearing stage. Employee's Counsel faxed the records on November 6, 2014, and they were received via regular mail on November 7, 2014.
[3] The parties stipulated to the admission of this document via email upon the Court's suggestion a few days after the hearing.

2

again told her supervisor and he denied her request for light duty. They located Biofreeze and Tylenol, but these were ineffective. Eventually, Employer agreed she could seek medical care at StoneCrest Medical Center (StoneCrest). It is undisputed that Employer received actual notice of the injury. Employee sought emergency medical care at StoneCrest on July 16, 2014, with express authorization from Employer through Mr. Steakley.

At StoneCrest, Dr. Steven Aaronson diagnosed a left-shoulder strain and placed Employee on restricted duty of no lifting, pushing or pulling greater than 6-10 pounds. These restrictions were to remain in effect until her follow-up visit with a workers' compensation provider. (Exhibit 1, ACMR, p. 55). Employee received a panel of potential treating physicians from Employer and selected U.S. HealthWorks (HealthWorks) on July 18, 2014. (Exhibit 10).

Employee received authorized medical care at HealthWorks on July 18, 21 and 28, 2014, and August 1 and 13, 2014. She received treatment from Karynthia Phillips, a certified physician assistant (P.A.), on July 18 and 21. P.A. Phillips checked a box in the medical report form to indicate that the injury is work-related. (Exhibit 1, ACRM, p.8). She diagnosed a "shoulder sprain, back/thoracic spine sprain, overexertion from sudden strenuous movement, and disturbance of skin sensation." P.A. Phillips placed Employee on restrictions of no lifting more than zero pounds floor to waist or waist to shoulder, no forceful pushing or pulling and no repetitive hand/wrist motion. (Exhibit 1, ACMR, p. 11). These restrictions remained in effect following subsequent visits to HealthWorks on July 21 and 28 and on August 1 and 13, when P.A. Nan Waldkirch provided care. (Exhibit 1, ACMR, pp. 19, 23, 31 and 38). A Medical Certificate dated August 19, 2014 estimated that Employee "is expected to be able to return to usual duties: 8/26/14." (Exhibit 1, ACMR, p. 39).

After receiving restrictions from P.A. Phillips, Employee returned to work and delivered the restrictions to her supervisor. She testified that the job to which she was assigned on a welding machine required her to lift parts weighing two to five pounds. She complained about this assignment. Employer next provided her with a "light-duty" job of using a push broom/mop to clean the plant. By her own testimony, Employee provided evidence that Employer made a video illustrating how she could sweep/mop the floors using only her right hand and arm. Employer provided dust cloths so Employee could dust machinery using only her right extremity. Employee testified that pushing the broom/mop caused her back to hurt. She admitted she could do the dusting without problems. She testified that when she ran out of available cloths, the company did not replace them.

Employer offered the testimony of Brooke Holt, its Human Resources Supervisor since July 3, 2014. Ms. Holt testified regarding the circumstances surrounding the decision to discharge Employee under the Employer's disciplinary point system. Specifically, Employer maintains a disciplinary system that results in discharge should an employee accumulate eight "points" or more during a revolving 12-month calendar. The records revealed that Employee had accumulated 6.25 points by June 18, 2014. (Exhibit 5). An examination of Employee's time cards (Exhibit 3) following the injury of July 15, 2014, indicates that she worked and left late on July 16, 2014. On July 18, 2014, she selected a panel and had a doctor visit. On July 20, 21, 22 and 23, she did not work pending results of a drug screen. She received full payment for those days. On July 24, she performed light duty for an entire shift. On July 27, her time card is marked "NCNS" – meaning "no

3

call, no show." On July 28, she attended an appointment at HealthWorks. This absence did not result in any point being assigned. On July 29, a notation indicates she refused light-duty work and requested personal medical leave.

As a result of this work history, Ms. Holt testified that Employee received an additional point for missing work on July 27, the "NCNS" day. This increased her points to 7.25. A Disciplinary Action Form (Exhibit 5) prepared on July 28, 2014, indicates that Employee refused to sign the form. Employee testified she did call in to work and report that she would be absent on July 27, 2014. She testified she could not reach her supervisor, Mr. Steakley, but left a message with her team leader, Matthew Garrety[4], about her pending absence. She testified that her team leader responded to her by text message indicating that he would let the supervisor know. Employee further testified that when presented with the disciplinary form, she showed her supervisor the text message and that her team leader confirmed their communications. As a result she refused to sign the form. Employer did not offer the testimony of either the team leader or Mr. Steakley.

Employer called Mr. Brandon Skipper, plant production manager, to testify concerning procedures regarding calling in to alert Employer of a missed shift. Employer produced the employee attendance policy. (Exhibit 7). Mr. Skipper confirmed the policy contained a specific call-in number. However, he agreed, upon cross-examination, that the important point of the policy was to advise Employer of a pending absence. If using the call-in line resulted in leaving a message, bypassing the call-in line to provide direct notice to a supervisor or team leader accomplished the task.

Employee reported for work on July 29, 2014. As the evening wore on, she began to experience pain. The pain became so significant that she asked permission to leave early and seek medical attention. Permission to do so was denied, but Employee left anyway, more than four hours early. This resulted in another "point," which pushed her total to 8.25.

Late-filed medical records from StoneCrest (Exhibit 9) indicate that Employee arrived at 10:16 PM. She presented complaining of "neck pain" and "neck injury." She saw Dr. Clark Archer at 11:18 PM. In her history of present illness, she reported the "mechanism of injury" as "'work-related' due to lifting" and classified her current pain level as "moderate." Dr. Archer diagnosed cervical strain and gave her an unsigned note stating that Employee "was seen on 7/29/2014 and is excused from work from 7/29/14 through 7/31/2014." (Exhibits 2 and 9[5]).

---

[4] None of the witnesses spelled the team leader's surname. This is the Court's best guess.

[5] Employer's Counsel observed in a November 7, 2014 email that the late-filed medical records additionally identify Employee's family practice physician as Dr. Jian Wei. He stated that Employee had not listed Dr. Wei in response to a question asking her to identify all providers in her September 25, 2014 Responses to Interrogatories. He said he would be promptly obtaining copies of medical records and accordingly asked to supplement the record. However, Employee's Responses to Interrogatories were not moved into and marked as evidence in this interlocutory matter. Moreover, Employer's Counsel did not indicate specifically how the records could potentially be useful or determinative of any of the issues before the Court at the Expedited Hearing stage. The Court is not inclined to allow for further delay. Therefore Employer's request is denied. Should Dr. Wei's records offer relevant information, Employer may move them into evidence at the final Compensation Hearing.

On the next day, July 30, Employee telephoned Ms. Holt and told her about Dr. Archer's note excusing her from work. Ms. Holt testified she refused to honor the note since it came from an unauthorized physician. Ms. Holt further testified that the July 29, 2014, visit to StoneCrest was not authorized. Therefore, the "point" assessed for leaving early that evening was justified. Employer discharged Employee as of August 1, 2014.

Following the discharge, Employee continued with authorized medical treatment from HealthWorks. In her final visit on August 13, 2014, P.A. Waldkirch discharged Employee from HealthWorks' care and noted on the line designated "Referral:" the word "Ortho." (Exhibit 1, ACMR, pp. 37-38). Testimony revealed that Employee was accompanied on the final visit by a nurse case manager, Diana Laffoon. Employee testified without contradiction that after she left the appointment, the case manager went back inside to see the P.A. When the case manager returned, she advised Employee that her appointment would be with Dr. James Rungee at Tennessee Orthopaedic Alliance in Murfreesboro. Exhibit 1, page 38 confirms this fact. Page 40 of Exhibit 1 contains the following notation: "Per Nurse Case Manager & she asked me to write Dr. Rungee on referral for PT.[6]"

This documentary evidence was confirmed by the testimony of Christina Kilby, claims investigator for Carrier. Ms. Kilby testified she had previously instructed Ms. Laffoon to tell the P.A. to designate Dr. Rungee. An appointment was set with Dr. Rungee on August 21, 2014. Employee did not attend that appointment and instead filed a Petition for Benefit Determination on August 20, 2014. Mediation failed and a DCN was prepared and filed. Employee requested this Expedited Hearing.

**Employee's Contentions**

Employee contends she sustained an accidental injury arising primarily out of and in the course and scope of employment. She argues there is no evidence on the record to suggest otherwise In addition, Employer initially accepted the compensability of the injury.

Employee also asserts she is entitled to medical benefits and in particular a panel of orthopedic specialists. Employee asserts that the referral to Dr. Rungee is invalid because it came from a P.A. and not a physician. She further objects to the instruction by the nurse case manager, under the direction of Carrier, to the ATP to refer Employee to Dr. Rungee. She argues that the practical effect of this instruction rendered the referral "an insurance company referral" rather than a "physician referral."

Employee contends Employer should be liable for treatment provided by StoneCrest on July 29, 2014 because HealthWorks was not open at that hour, Employee's pain was severe, and the team leader and supervisor did not object when she said she needed immediate medical attention.

Employee further argues that Employer failed to accommodate her restrictions and provide her with appropriate light duty. She asserts she was wrongfully terminated. She contends that

---

[6] "PT" is an abbreviation for patient.

Employer is liable for past temporary partial disability (TPD) benefits from the date of her termination and continuing TPD until she attains MMI and is able to return to work. Although a HealthWorks "Medical Certificate," dated August 19, 2014, states that the estimated date Employee should be able to return to work is August 26, 2014, that information is superseded by the MRI finding that she may have sustained a labral tear. Therefore, Employee remains eligible for ongoing TPD because Employer has not provided her with appropriate orthopedic care to properly treat her injury.

### Employer's Contentions

Employer disputes that Employee sustained an accidental injury arising primarily out of and in the course and scope of her employment. Employer notes that Employee had worked for it for only six months and questions Employee's credibility. Employer contends that the injury might have been sustained during the break when Employee picked up the cup, or at some unknown point in time when Employee was exercising.

Employer provided a panel of three outpatient clinics, as has been customary in workers' compensation practice for many years now. Employee has accepted that treatment thus far. The P.As whom she saw were acting under the direction of physicians and therefore their recommendations carry weight equal to that of a physician. The statute only allows employers, not employees, to object when an attending physician makes a referral. Employer made no attempt to manipulate the statute or the system when the nurse case manager asked the P.A. to refer Employee to Dr. Rungee. Rather, Employer/Carrier has developed a professional relationship with him, he brings the requisite expertise and he has treated workers' compensation claimants for years.

Employer argues that it did not authorize the July 29, 2014 StoneCrest visit and should not be liable for it.

In addition, Employer was properly accommodating Employee's restrictions with light-duty work. Employee was terminated for cause on July 30, 2014, because on July 27, 2014, Employee did not follow the correct call-in procedures, and on July 29, 2014, she left without completing her shift to receive unauthorized care. The authorized provider never took her completely off of work. But for Employee's decision to leave on July 29, 2014, she would still be performing light-duty and drawing her salary. Therefore Employer is not liable for past or continuing TPD benefits.

### Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann.

§ 50-6-102(13).

*Factual Findings*

On July 15, 2014, Employee sustained an injury to her left shoulder by accident arising primarily out of and in the course and scope of the employment. Employer authorized Employee to seek medical care from StoneCrest on July 16, 2014.

Employee received additional authorized medical treatment for the injury with the following medical providers: HealthWorks, July 18-August 13, 2014; Star Physical Therapy, July 25-August 5, 2014; and Vanderbilt Imaging, August 8, 2014.

At Employee's first visit on July 18, 2014, HealthWorks placed restrictions against use of her left extremity. Employer reasonably accommodated those restrictions. Employee made reasonable efforts to notify her supervisor regarding her absence on July 27, 2014 in compliance with Employer's policy. Employee left work early on July 29, 2014 to receive unauthorized medical care. The absence led to Employer terminating her under its disciplinary procedure. Employer incorrectly assessed a disciplinary point for the absence on July 27, 2014. Therefore, Employer's termination of Employee was improper under Employer's standards.

On August 8, 2014, Employee underwent an MRI, which results suggest a labral tear.

On August 13, 2014, HealthWorks discharged Employee from further care and referred her for orthopedic treatment. Employer/Carrier objected to the general referral on August 13, 2014, when the nurse case manager requested Dr. Rungee as the specific provider of orthopedic care.

*Application of Law to Facts*

1. **Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer.**

An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence. *See* Tenn. Code Ann. § 50-6-102(13)(A)(2014). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)(2014). The Tennessee Supreme Court has held that if it is apparent to the rational mind, after considering all of the circumstances that there is a causal connection between the conditions under which the work is required to be performed and the resulting injury, then such accidental injury "arises out of one's employment." *Crew v. First Source Furniture Group,* 259 S.W.3d 656, 664 (Tenn. 2007).

Except in the most obvious, simple and routine cases, the claimant in a workers' compensation action must establish by expert medical evidence the causal relationship between the claimed injury and the employment activity. *Orman v. Williams Sonoma, Inc.* 803 S.W.2d

7

672 676 (Tenn. 1991). P.A. Phillips, the ATP, documented the injury as work-related in her initial assessment. Her opinion is presumed correct under Tennessee Code Annotated section 50-6-102(12)(E)(2014).

Trial courts must assess witness credibility when weighing the evidence prior to making factual findings. Live testimony is the preference. *See generally Kelly v. Kelly*, --- S.W.3d ---, 2014 Tenn. LEXIS 664 (Tenn., Sept. 10, 2014); *see also Kenney v. Shiroki N. Am, Inc.*, 2011 Tenn. LEXIS 182, 9 (Tenn. Workers' Comp. Panel Feb. 28, 2011) ("When credibility and weight to be given to testimony are involved, considerable deference is given the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony.") However, the Tennessee Supreme Court held in *Kelly* that telephone testimony is more akin to live testimony than to documentary evidence, and appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility. *Id., *30.* The high court gave indications of credibility that can be gleaned via telephonic testimony when it adopted language in the appellant's brief as follows:

> Only the Trial Court heard the tone and inflection of [the counselor's] voice. The Trial Court was in the best position to determine whether [the counselor] sounded calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased. [The counselor] was a virtual live witness – linked by wire in open court – responding in her own voice in real time to questions on direct and on cross examination. [She] was not a cold transcript for the Court of Appeals to assess anew.

*Id.*

As recapped in the previous "History of Claim," Employee's testimony offered sufficient detail regarding the circumstances of her arm and shoulder injury. Employee's fulltime assembly line duties require fairly constant, repetitive motions and lifting, which are wholly consistent with the type of injury she sustained. In fact, Employee testified about a specific event. Employee's testimony was credible, considering the factors outlined in *Kelly*. Specifically, Employee's tone and demeanor were calm, at ease, self-assured, steady, confident, forthcoming, reasonable and honest. She gave the Court no indications to doubt her veracity. Further, a claimant's assessment of his or her physical condition is competent testimony and may not be disregarded. *Uptain Constr. Co. v. McClain*, 526 S.W.2d 458, 459 (Tenn. 1975).

On cross-examination, Employer's Counsel engaged in a brief line of questioning regarding whether Employee had injured herself working out, but put forth no proof to substantiate that the injury was sustained anywhere other than the workplace. Employer did not call any witnesses to contravene Employee's version of the particulars of her sustaining the injury while working. Therefore, at this interlocutory stage of the case, Employee has satisfied the *McCall* standard to show that the injury arose primarily out of and in the course and scope of employment with Employer.

8

**2. Employee is entitled to a panel of orthopedic specialists for additional authorized treatment.**

Tennessee Code Annotated section 50-6-204(3)(A)(ii) provides:

> When necessary, the treating physician selected in accordance with this subdivision (a)(3)(A) shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer. The employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups. In this case, the employee may choose a specialist physician, surgeon, chiropractor or specialty practice group to provide treatment only from the panel provided by the employer.

Tenn. Code Ann. § 50-6-204(3)(A)(ii)(2014).

The authorized medical treatment rendered in this case was by two licensed physician's assistants. Employee asserts that the referral to Dr. Rungee is invalid because it came from a P.A. The Court disagrees; *see,* Tennessee Attorney General Opinion 06-126 ("Because physician assistants and orthopedic physician assistants render services 'under the supervision, direction, and ultimate responsibility of a licensed physician accountable to the Board of Medical Examiners,' Tenn. Comp. R. & Regs. 0880-3-9-.02; 0880-10-.02, any medical services they may recommend or provide are therefore ultimately ordered by the attending physician."). Therefore, the protocol established by the Tennessee Board of Medical Examiners is consistent with the P.A. issuing restrictions, treatment orders and making specialty referrals. In this case, the attending P.A.s issued restrictions by which the Employer abided and the Employee insisted upon. The P.A.s designated physical therapy and ordered an MRI. All parties agreed to these actions and complied with their orders. Therefore, all treatment, restrictions and referrals from the attending P.A.s in this case are valid actions under the Tennessee Workers' Compensation Act.

On Employee's last visit with P.A. Waldkirch on August 13, 2014, a notation appears on the handwritten record, "Referral: Ortho." (Exhibit 1, ACMR, p. 37). On p. 38 of Exhibit 1, a typed version of the same note appears as follows: "Referral: ORTHO." Below this typed notation in the "Comments" section is written, "Dr. Rungee TOA (Murfreesboro) 8-13-14 per nurse case manager."

The Court finds that the P.A. made a general referral to "Ortho" meaning orthopedic treatment. The Court finds that the case manager then asked the P.A. to specifically refer Employee to Dr. Rungee. This sequence of events is significant for the reasons that follow. The Court finds this general referral to an "Ortho" to comply with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2014). At the time of that referral, if the Employer disagreed with the general referral, its response is to have accepted the referral or within three (3) business days of the general referral to provide Employee with a panel of three (3) or more "independent reputable physicians, surgeons, chiropractors or specialty groups." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i)(2014). The

9

Court finds that Employer failed to comply with the statutory referral procedure by returning to the P.A. and directing a specific referral to Dr. Rungee.

This is a new statutory scheme effective July 1, 2014. Under the new law, the authorized treating physician (ATP) makes a referral to a specialist. The employee has no choice in accepting the referral. The employer, if it does not approve of the referral, has three (3) business days to provide a choice to the employee by providing a panel of physicians from which to select. The employer cannot direct a specific referral without choice by the employee after the ATP makes a general referral. That would destroy the statutory scheme. Employee has asked for a panel from which to choose an orthopedic provider in this case. Under the circumstances in this case, Employee is entitled to a panel of orthopedic physicians from which to select a provider.

### 3. Employer is not obligated to pay for the medical expenses related to Employee's July 29, 2014 emergency room visit.

The Court finds that Employer specifically authorized Employee to visit StoneCrest on July 16, 2014, the date of the injury. Following that visit, Employee selected HealthWorks as the ATP. On July 29, Employee asked to leave work to be treated for pain. This request was denied, but Employee left anyway and sought treatment at StoneCrest.

Whether an employee is justified in seeking additional medical services to be paid by the employer without consulting him depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986). In *Buchanan,* an employee unilaterally abandoned the medical services her employer provided. *Id.* at 657. The high Court reasoned that, at the least, she could have notified the employer that she was not obtaining relief from the only doctor to whom she had been referred to allow the employer the opportunity to comply with the statute. *Id.* The Court concluded that section 50-6-204:

> Makes it clear that the intent [of the Legislature] … was for the employee to certainly do no less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy.

Tennessee Code Annotated section 50-6-204(a)(1)(A) states that "the employer . . . shall furnish, free of charge to the employee, such medical and surgical treatment, medicine, medical and surgical supplies . . . as ordered by the attending physician and hospitalization, . . . made reasonably necessary by accident as defined in the chapter," namely a work-related injury. Tenn. Code Ann. § 50-6-204(a)(1)(A)(2014). The Tennessee Supreme Court has held that when an employee receives medical care for a work-related injury that has not been authorized by the employer, the employee must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn.2004).

In this matter, unlike in *Buchanan,* Employee did give adequate notice of her intent to seek unauthorized treatment because the ATP was not open at that hour. At first blush, it would seem

10

reasonable that she returned to a treatment provider that had previously been authorized, However, at this time, Employee has offered minimal medical proof as to the medical necessity of the July 29, 2014 emergency department visit to StoneCrest. The late-filed records state that she characterized her pain as "moderate." Dr. Archer discharged her within less than two hours' time at the hospital, without prescribing medication or follow-up care. The fact that he did write her the note excusing her from work for that night and the next two nights, without explanation, admittedly makes this a close call. However, even assuming the treatment was necessary, significantly, Employee failed to offer any proof as to the amount or reasonableness of the medical bills incurred on that visit. In sum, Employee has not satisfied her burden of proof for this Court to find that Employee's injury posed a medical necessity to justify seeking such treatment, nor has she offered any proof as to the amount of or reasonableness of the charges for such service. Employee's request for these medical expenses is denied at this time.

**4. Employee is entitled to past and future temporary partial[7] disability benefits, because although Employer made reasonable accommodations for Employee's restrictions, Employer wrongfully terminated Employee.**

Entitlement to temporary disability benefits requires proof that the employee's inability to work is related to a compensable injury, and concludes when the injured employee reaches MMI. *Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn. 1978). *See also, Gray v. Cullom Machine Tool and Dye, Inc.,* 152 S.W.3d 439 (Tenn. 2004); *Gluck Brothers, Inc. v. Coffey,* 431 S.W.2d 756 (Tenn. 1968). Temporary restrictions assigned by medical professionals during an injured employee's medical treatment do not entitle the employee to continued temporary disability benefits if he or she was able to perform work other than the pre-injury former job without loss of income. *See, Long v. Mid-Tennessee Ford Truck Sales,* 160 S.W.3d 504 (Tenn. 2005); *Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770, 776 (Tenn. 200); and *Vinson v. Firestone Tire and Rubber Co.,* 655 S.W.2d 931 (Tenn. 1983).

An injured employee may not be entitled to temporary disability benefits if he or she is terminated from employment for cause and the employer reasonably would have been able to provide modified duty within the restrictions assigned. To be excused from this obligation, the employer is required to demonstrate that the termination of the injured employee's employment involved a breach of the reasonable expectations of an employer and appears

---

[7] Temporary partial disability arises when "the temporary disability is not total." *Stem v. Thompson Servs.,* 2011 Tenn. LEXIS 742, 27 (Tenn. Workers' Comp. Panel, July 26, 2011), citing 20 Reynolds § 14:4, at 213. Addressing temporary partial disability, Tennessee Code Annotated section 50-6-207(2), provides that "[i]n all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." *Id.* The 2014 changes codify the compensation rate for partial disability in section 50-6-207(2)(B)(2014) using the same calculation. In this matter, Employer paid Employee her regular wage for the time that she worked light-duty, and accordingly the parties have stipulated to a compensation rate based upon it. Therefore, although her disability benefits are properly labelled as temporary partial disability, they have been calculated in accordance with Tennessee Code Annotated section 5-6-207(1)(A)(2014) for total temporary disability benefits – to wit, sixty-six and two thirds percent (66 2/3%) of the average weekly wage.

reasonably appropriate. In such cases, the employer is deemed to have made reasonable efforts to accommodate the employee's work restrictions and the Employee's work injury is not the reason why he is not returned to his former job. *See, generally, Carter v. First Source Furniture Group,* 92 S.W.3d 367, 371-372 (Tenn. 2002) (holding that, "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case," *Id.* at 368).

In the present case the Court finds that Employer made a reasonable accommodation for Employee's restrictions. In fact, Employer produced a video for the Employee to demonstrate how the assigned tasks could be performed without violating the assigned restrictions. Although Employee complained that the sweeping assignment caused her back to hurt, she did make efforts to perform that task. Employee admitted that she could do the dusting job without complications.

However, the Court finds that Employee's discharge was not appropriate under the Employer's own guidelines. Employee should not have been assigned a "point" under the eight (8) point dismissal system for missing work on July 27, 2014 on a "no call, no show" basis. Employer's superintendent, Mr. Skipper, clearly testified that Employee's method of calling-in is an acceptable reporting method. No testimony refuted Employee's testimony that she advised her team leader of her pending absence and that he confirmed receipt of the notice by a responsive text message. Therefore, the discharge was incorrect and not reasonable.

The Court finds that the Employee is significantly restricted in her physical work activities. But for the unreasonable discharge, Employer would have provided Employee work within the restrictions that were issued. Therefore, since those restrictions remain the only proof of Employee's physical restrictions and there is no medical finding of MMI[8], Employee is entitled to past-due temporary partial disability benefits in the amount of $430.21 per week from August 1 to November 12, 2014, totaling $6,330.38. Employer's obligation to continue said benefits remains until Employee is declared to be at MMI or returns to work.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Employee's injuries shall be paid and Employer or its workers' compensation carrier shall provide Employee with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204, to be initiated by Employer or its workers' compensation carrier providing Employee with a panel of orthopedic physicians as required by that statute. Medical bills shall be furnished to Employer or its workers' compensation carrier by Employee or medical providers.

2. Employee shall remain liable for any balance owed to StoneCrest relative to the July 29, 2014, emergency room visit.

---

[8] The Court acknowledges that the HealthWorks Medical Certificate dated August 15, 2014 indicates an "estimated" date of August 26, 2014 that Employee is expected to be able to return to regular duties. (Exhibit 1, ACMR, p. 39). The Court finds this to be speculative and unpersuasive.

3. The amount of temporary disability benefit is $430.21 per week based on Employee's average weekly wage of $645.32.

4. Payment of past due benefits in the amount of $6,330.38 shall be made for the period from August 1, 2014 to November 12, 2014.

5. Employer or its workers' compensation insurance carrier shall continue to pay to Employee temporary disability benefits in regular intervals until Employee is no longer eligible for those benefits by reaching maximum medical improvement, by returning to work, or by release without restrictions by the authorized treating physician. Employer's representative shall notify the Division, Employee and Employee's counsel, if any, in writing immediately by filing Form C-26 of Employer's intent to terminate temporary disability benefits, citing the basis for the termination.

6. This matter is set for Initial Hearing on December 10, 2014 at 9 a.m.

7. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

8. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 12th day of November, 2014.**

**Kenneth M. Switzer, Chief Judge
Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers Compensation. You must dial in at 615-532-9552 or 866-943-0025 toll free at to participate in your scheduled conference.**

**Please Note:  You must call in on the scheduled date/time to participate.  Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

13

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of November, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Keith Jordan, Employee's attorney** | | | | | | **jordanlawoffice@comcast.net** |
| **Emil L. "Chip" Storey, Employer/Carrier's attorney** | | | | | | **cstoreyj@travelers.com** |

14

Kenneth M. Switzer, Chief Judge
Court of Workers' Compensation Claims